et al, 20-4197. Thank you, your honor. May it please the court, Thomas K. Landry for repellent, reserving three minutes for rebuttal. This is an appeal from dismissal of an action seeking recovery of improperly charged bank fees. The bank promised not to charge overdraft fees for so-called non-recurring transactions, which according to the agreement are such things as groceries, gas or coffee, as opposed to recurring transactions, which are such things as automatic rent, mortgage, car or utility payments. The promises the bank made are unambiguous, unqualified. We do not charge you for an overdraft item fee on an everyday non-recurring debit card transaction. We do not charge an overdraft item fee. We do not charge you an overdraft item fee on an everyday non-recurring debit transaction. There are about a half a dozen of these promises throughout the agreement. Nonetheless, those fees were charged and the bank blames it on merchant misclassification of the fees, as merchants misclassified them as recurring when they were five excuses for that. First, I'll start with the district court's ground for dismissal, which is that under the agreements say, except as otherwise expressly provided in this agreement, if you fail to notify us in writing of suspected problems or unauthorized transactions within 60 days, after we make your statement or items available to you, you agree that you may not make a claim against us. That's a problem for you. You say that the unauthorized charge is not a problem. It's an unauthorized fee. The term problems and unauthorized transactions is a defined term in the agreement, page A57 of the appendix. It says, what are problems and unauthorized transactions? And I'm quoting, problems and unauthorized transactions include suspected fraud, missing deposits, unauthorized electronic transfers, missing stolen or unauthorized checks or other withdrawal orders, checks or other withdrawal orders bearing an include those things. And then it says, this is not a complete list. Now, why is this not a problem? Why is this not a problem that they charged an overdraft fee when they shouldn't have? Problems and unauthorized transactions is a defined term and all of the items on the list in that specific definition of the term, it's concerned transactions with third parties, problems and unauthorized transactions. Why is this not a problem within the plain meaning of the word problem? Because the word problem, it's a defined term, problems and unauthorized transactions. And it's defined by a list of specific items and under basic principles of contract interpretation. It's not defined by a list of specific items. It's defined to include a list of specific items. That's very different from saying it's defined by a list of specific items. Right. But it renders the list of specific items superfluous if you simply throw them out and replace them with the one word problems. No, it doesn't make them superfluous. They're helpful and indicate that they may expand. They may expand the scope of what is the problem by calling attention to various kinds of things that will be deemed problems. It's not superfluous. Actually, Judge LaValle, all of those items are third-party transactions. And at most under the principle of adjustum generis, one would say the term problems and unauthorized transactions encompasses perhaps other kinds of you know, can encompass bank fees. In terms of the alternative argument, it's your position that this was not an electronic fund transfer? Certainly not. The glossary that is incorporated in the agreement defines a transfer as a movement of funds from one account to another. This is not a movement between the regulation in CFR 205-3B15 defines an electronic transfer to include transfers resulting from debit card transactions. That would seem to apply squarely to this. This was a debit card transaction, right? Oh no, that doesn't refer to the bank fee. That refers to the transfer of funds from the customer's account to Starbucks or whatever other merchant. The bank fee resulted from a debit card, from five debit card transactions, right? But it's not a transfer within the meaning of transfers under the agreement or under the statute or under the regulations or common industry usage. Transfers are not fees and fees are not transfers. Fees are what are charged for transfers in certain situations. You're focusing on the fees as opposed to the cost for the fees. What caused the fees was a problem with a debit card transaction, which is also arguably a coding issue. Well, the contract does not refer to coding. It refers to encoding errors, which is again, a term of art in the banking industry, has nothing to do with debit card transactions. That's as clear as can be. It refers to magnetic character recognition technology, the sort of characters that you see at the bottom of your check with the routing and account numbers and other symbols that have their own purposes in that technology. The application of adjustum generis is very straightforward here to that list of problems and unauthorized transactions. You have to understand, your honors, that the reason there's a 60-day rule in these banking agreements is that the bank has time, therefore, to go get the funds back from the other institution to which it went. And that's not necessary. It's not the case. In the case of fees, the bank still has the money. There's no urgency. There's no need to put a 60-day limit. That's why all of those items in that specific list, problems and unauthorized transactions, concern third-party matters. Where the money's gone, we need to know fast to get it back. And if you don't report it to us, then we can't get it back, so we can't give it back to you. Here, the bank has the money. The bank shouldn't have charged the fees. And it has no right to keep the funds. That's the crux of the action. Okay, Mr. Landrieu, you've reserved three minutes. And we'll turn to Ms. Smedley. Thank you, your honor, and may it please the court. I think that judges LaValle and Chin have hit on exactly what we have found troubling with plaintiff's arguments on appeal. We believe that the complaints of improper overdraft fees are necessarily and allegedly complaints concerning improper transfers. And we think this is evident from paragraphs 58, 60, and 77 of the complaint, which do present grievances over the underlying transactions that caused the fees. And plaintiff's appeal here asks the court to divorce overdraft fees from the electronic fund transfers that gave rise to them, just so he can avoid the 60-day notification requirement that he did not comply with. Plaintiff now argues that he had no notice obligation because his only grievance is with the overdraft fees themselves and not the triggering transactions. But the two cannot be separated. A determination as to whether the fees challenged here were correctly or incorrectly imposed depends entirely on whether the transfers were properly made or should have been declined. The complaint itself alleges that the transactions should have been declined because they were non-recurring. And the agreement expressly prohibited, sorry, quote, expressly prohibited the authorization of the non-recurring debit card transactions, end quote, from paragraph 60. The contract error notification provisions squarely govern plaintiff's claims when they are not artificially limited as in plaintiff's briefs. The deposit agreement at 42, which can be found at appendix page 64, and the debit card agreement at five, which is appendix page 97, require 60-day notice to the bank of any errors presented on a customer's monthly statements. These provisions also track the Electronic Funds Transfer Act and Regulation E. We also, you know, have concerns about the practical impact of plaintiff's arguments. Considering the fees in isolation divorced from the transactions themselves wouldn't make practical sense. Plaintiff seeks to reverse overdraft fees through this lawsuit filed more than four years after the fees were charged. His theory would provide a perverse incentive for bank customers who could flout the contractual notice provisions for any electronic funds transfer they believed had incorrectly incurred an overdraft fee and then wait for an indefinite amount of time to challenge just the fees, while the passage of time renders the bank unable to recoup the funds from the third-party payee, here Starbucks, as Mr. Landry acknowledged, while the customer retains the underlying transaction. This scenario we do not believe is contemplated or intended by the contract. There's another reason, aside from the transactions being intertwined with the fees, that this court can affirm the district court below, and that is that plaintiff's contract interpretation is not commercially reasonable. It obligates the bank to determine whether particular transactions are recurring, and it uses a definition of that term that is not supported by the contract. Recurrence coding is the responsibility of the merchant, and the Federal Reserve's official interpretation of Regulation E entitles the bank to rely on the merchant's determination. The very purpose of the notice requirement that plaintiff disregarded is to and that's because financial institutions are not in a position to know whether a particular transaction in isolation is actually recurring or not, but merchants and consumers are. So in this case, is it clear that from the record that the merchant is the one that decides that codes this as recurring or non-recurring? I mean, I didn't see anything in the record in terms of a notification from Starbucks. We have the bank statement that says recurring, and I was just wondering if there's anything in the record as to as to what Starbucks says to the bank. I, sitting here, I am not sure, but I don't think that's disputed by the plaintiff. I mean, does the bank seem to suggest, I mean, the plaintiff seems to suggest that the bank should have caught this error, and it's hard to evaluate that without knowing more. I mean, I would assume that the bank is receiving millions of these transactions every day, or tens of thousands, hundreds of thousands, and I just don't know, I mean, is a bank in a position to check to see, oh, this doesn't make sense because it's a cup of coffee, it shouldn't be recurring? Right. The bank is absolutely not in a position to make that determination, partly because, as you know, the first charge in a series of recurring charges is going to look like a single charge, and in this case, actually, five of these Starbucks transactions showed up on the same monthly statement, so, and they were labeled recurring because that is the report the bank got from the merchant, so the bank really had no good reason to doubt that the transactions were, in fact, recurring, but had plaintiffs let the bank know that he thought there was something wrong with the transactions on his monthly statement, you know, that is the reason for the notice so the bank can address it, and I think from the allegations in plaintiff's complaint, it's pretty clear that when the bank was receiving notice from its customers, even on something as informal as social media, the bank was addressing those concerns or reaching back out to the consumers and trying to address those concerns, and I think, as I mentioned before, you know, regulation, the Federal Reserve's official interpretation of Regulation E specifically permits financial institutions to rely on the merchant coding because it's so difficult for financial institutions to analyze this multitude of these transactions and determine which are recurring when the actual parties to those transactions will be able to tell the bank much more easily. Last but not least, of course, the court can affirm the district court for on the ground that the district court dismissed the complaint, and that is that the problems contemplated in the reporting provision that you were previously discussing with plaintiff's counsel does encompass customer disputes with overdraft fees, and we believe that the explicitly non-exhaustive language of this provision supports the district court's finding. What would you say if I put to you that I don't find your arguments to associate this transaction with any of the specifics mentioned in the list of what problems include? If I don't find it clear that this falls within any of those, such as unauthorized electronic transfer, what argument would you then rely on as to why this comes within the term? I mean, the plaintiff relies on the proposition of contra preferentum. You've got up this list, you've got up this definition, and so it makes sense to interpret ambiguities against you. So, if we were, for example, to find it not clear that it comes within unauthorized electronic transfers or any of the other specifics mentioned, what would you then rely on to support your case? So, the provisions that we rely on are different from that provision, and those can be found. My proposition is whichever ones you rely on, if we find them ambiguous and not necessarily persuasive, summoning up the plaintiff's contra preferentum argument, what would your fallback be? So, those provisions can be found at appendix pages 64 and 97, and these are error notice provisions in the deposit agreement and debit card agreement that plaintiff was party to. Those provisions do not provide a specific enumerated list. Those provisions apply to electronic fund transfers, which, as I mentioned, we believe are inextricably intertwined with the fees that are complained of here, and those provisions are nearly identical. They say call or write us at the telephone number or address below as soon as you can if you think your statement or receipt is wrong or if you need more information about a transfer listed on the statement or receipt. We must hear from you no later than 60 days after we sent you the first statement on which the error or problem appeared. So, those are the provisions. He's not complaining about the fact that you paid Starbucks. He's complaining about the fact that you charged him a fee when you said you wouldn't. But I think it's hard to look at the overdraft fees in a vacuum. Complaining about the overdraft fees necessarily is a complaint that we ended up paying the fee, paying the charge instead of declining the transaction. If the court has no further questions, we would ask that you affirm the judgment of the district court, and I thank you for your time. Thank you. Mr. Landrieu, you've reserved three minutes. Thank you, Your Honor. On that last point, I was going to make the point that you raised with your last question, which is that there is no complaint here that the customer got a cup of coffee for his money. The complaint is that he paid an extra $35 for it, an instance of what's the gravamen of the complaint that's repeated millions of times over. So, it's a very serious matter, and so the policy concerns have to take that into account as well, to the extent policy concerns might come into play in a simple contract interpretation. Furthermore, it's worth pointing out that in the Federal Register at page 59,041 under the relevant rulemaking that has been cited in the briefs, the Fed itself recognizes the distinction between paying an overdraft and charging a fee and says bank can pay an overdraft if it wants, but, quote, the financial institution is prohibited from assessing a fee or charge for paying the overdraft. So, even if a customer hasn't opted in, go ahead and pay the overdraft, that's not going to be the end of the world, but they can't charge a fee for it. So, that's the bottom line that this suit gets to. The bank is not entitled to those fees under the explicit, unambiguous, unqualified promises made in numerous places throughout the contract, and I won't burden you with my reading them again. My difficulty with your position, and I'm curious how you answer this, my difficulty is that the word problem may be ambiguous in its peripheries. I can't say that the word problem is unambiguous with respect to every possible issue that it might or might not cover, but it seems to me to be unambiguous with respect to whether you have a problem when the bank improperly charges you with a fee that they're not entitled to charge you. And the fact that the discussion, that the, what you call definition of problem, includes a list of particular types of transactions, which the banks say are included within problems, does not seem to me to negate the fact that the word problem unambiguously covers being charged a fee that the bank is not entitled to charge you. And so, I don't see, I don't see the appropriateness of your argument about Aegis Dem Generis narrowing the scope to be only something that is consistent with the list of included things. They were not presented to be the definition of what the problem is. They were presented to give examples of things that could be problems, but the word problem is clear in its application to the charging of an unauthorized fee. What's wrong with that? Well, two things in addition to my comments earlier, but I think it's worth repeating one of them. This is a 60-day notice provision. We're not talking about the kind of transfer that needs to be clawed back within 60 days in the banking system or it's gone forever. The bank still has the money. The bank illegitimately got the money and the bank needs to give the money back. The other point I was going to make about the use of the word problem is that, borrow something from patent law, it's a little far afield, but someone who writes a patent has said his own lexicographer. You can use the word problem in a narrower sense than its sort of most universal and dictionary-like meaning. And that's what was done here. It is a defined term. The contract says, what are problems in unauthorized transactions? It gives you a list. And just to play devil's advocate, if there's no limit, what if the bank skimmed the nickel off everybody's account every month? Would they get to keep everything that wasn't discovered within 60 days by every customer? That would be a problem if they did that, but it hardly should be interpreted as the customer's responsibility and unrecoverable if not identified within 60 days. My counterpart mentioned the four years between the time of the statement and the time of the complaint. This is contract action. It's a very important part of that. Another point that was made was essentially that the bank has no way of knowing what's what. Well, first of all, no need to cry for the bank here. The bank has money that it should not have under the facts alleged in the complaint. It should not have these funds. We're not asking for some punitive damages or reward here. We're asking for a return of ill-gotten gains. There's no basis for allowing the bank to keep that. Furthermore, the bank doesn't entirely deserve sympathy. At the time of the rulemaking in 2009, they told the Fed it would take a couple of years to work out the systems and arrange things with charging people willy-nilly. Nothing's been done to fix this problem. It's 12 years later. Furthermore, even if you wanted to just come to a rough approximation of how to deal with the situation, the agreement itself says that non-recurring transactions are things like groceries, gas, and coffee. Okay, this is coffee. Non-recurring transactions are things like rent, mortgage, car, or utility payments. We're not talking about car payments here. All they had to do was see that they were charging overdraft fees for cups of coffee, and they could have easily known that something was wrong. They don't really deserve a bit of sympathy, in my opinion. I think that pretty much concludes my reply, unless there are any other questions, Your Honors. Thank you, Mr. Landrieu, very much. Thank you for your long day of work. And Ms. Smedley, both of you. Thank you. We'll reserve decision, and we are adjourned. Thank you. First and second. Thank you, Douglas. I'll pass for now. Thank you. Thank you. Thank you.